Appellant. Mr. Jeffress for the Appellant, Ms. Seifert for the Appellee. May it please the Court, I'd like to reserve three minutes for a bubble. I'd like to address the procedural errors with respect to the length of the sentence first and then turn to the Special Conditions of Supervised Release. On the issue of the sentence itself, this Court's opinion in United States v. Lemon states that appellate courts must be concerned not merely when a sentencing judge has relied on demonstrably false information, but when the sentencing process created a significant possibility that misinformation infected the decision. And this Court relied on Lemon just earlier this year in United States v. Capote where the Court vacated the defendant's sentence and remanded for resentencing where an allegation regarding the defendant's participation in a gunfight had not been sufficiently proven in order for the district court to consider it in sentencing, in increasing the defendant's sentence. Here, the government has essentially conceded on appeal that the government mischaracterized the state of the evidence to the district court. On page 23 of the government's brief, they characterize the record about why Mr. Rock failed to continue in his communications with Detective Palachek as ambiguous. That's here before this Court. And that's a candid admission that I think the government counsel has correctly made on appeal. But it's a far cry from what the government, from how government counsel characterized the evidence before the district court at Mr. Rock's sentencing. Where did the district court rely on the camera show issue? Well, I'm sorry. Where in the district court's sentencing decision, announcement of the sentence, did she rely on this camera show and what caused it to be avoided? Right. And I think that's the issue is that the district court didn't never address, never sufficiently address the issue. Right. So, I mean, I think both parties, and I think, you know, it makes sense that this issue would have been significant to what sentence Mr. Rock should receive within the 11C1C range. When you look at her whole decision, we can't require district courts to stake out a position on every single dispute between the government and the defendant. And when you look at what the district court was relying on here, which was the volume of child pornographic materials that had been accessed online, traded, the videotaping, the emailing, sharing of the videotapes of his, not stepdaughter, I guess his girlfriend's around, the debate about what happened in that last 48 hours just wasn't going to be a material dispute to her sentence. What is your answer to that concern? Well, I think under Rita and under the law regarding the procedural requirements of sentencing, when the parties emphasize something, when one party emphasizes something in mitigation, which I think, you know, common sense would be important to deciding where Mr. Rock should be sentenced within the range, which is whether he is the kind of offender who either in this case or generally would attempt a contact offense, which I think creates another set of concerns here that could increase the sentence to the maximum range. So when that's at issue and when the government also devotes significant attention to addressing that argument, and this is both in the pleadings, the sentencing memorandum filed ahead of time, but then also at the actual sentencing hearing, the district court doesn't have to find it significant, but I think the district court, it's incumbent on the district court to state that. Wouldn't you have to show some prejudice though, that somehow we've made a difference, point to something in the decision that suggests that we've made a difference? I think given again what she was focused, was she, right, what she was focused on and the current concerns that she had and, you know, the fact there's a dispute there, the ambiguity surrounding the circumstances mean that it wasn't going to be clear-cut either way. Right, and so we don't know, right, and then that's the problem. I mean, if the district court had said, look, I don't care about this, it's not material to my sentencing, whether he was going to do this or not, I can't tell, so it's not going to be a factor in my sentencing, I think that would have handled this issue. But we don't know. It wouldn't be your arguing if she had done that, but we can't require, there has to be a limitation on when we require judges to answer every dispute back and forth between the parties. You could have been disputing about whether the earth is flat or round, and she said, look, it doesn't matter to me, and that's certainly implicit in the decision here, is it not? I think it is, but I think what Rita and the other cases say, I mean, Rita says and the other cases have taken from that, is that when something is emphasized to this extent by a party or by both parties, it's at least incumbent on the district court to engage in what is not a very onerous exercise of stating, I'm not, that's not something that's affecting my sentencing. To take that issue off the table, I mean, logically, I'm sorry. Logically, this is something that would be sort of important. And the fact that the district court, I mean, the fact that the government... Why? I mean, the other thing I'm going to ask is, what is it so mitigating about not responding to an email? Well, I think because, I'm sorry, I'm referring to the larger issue about whether Mr. Rockwood crossed the line between looking, and there's a hidden camera component of this, and actually engaging in a contact. All right, but to be clear, that's the point. That's the point. He was already on the record that even if he was not seeking to have sex with the child, he was paying someone else to rape her on video for his viewing pleasure. Well, he agreed to... He was going to watch his entertainment. That's what the agreement was, and he made the down payment for it. And he'd also exposed himself to the daughter, left the vibrating egg in the room. All of these things, again, you get the sense from the district court's opinion when you read it, that this was not going to be a determination that he was just looking at pictures online. Well, if those were going to be important factors, then I think, again, it's incumbent on the district court to say, look, I'm finding that this is what he's engaging in, because when the time came for that actual thing to happen, and when the officer... But she did talk about, look, you're right there in the house videotaping this child, looking around her. I thought she referenced the exposure, and it was undisputed that there was at least this agreement between your client and Officer Detective Palachuk, and that the video images, including of his girlfriend's daughter, had been made. And if the government had stopped with that, I think we certainly wouldn't be here. No, but then you're back to saying that the point is she didn't resolve the factual dispute about the signification or not of him not having responded to an email. But I thought you said what really is going on here is that you were trying to divide the world into contact, non-contact, and this just doesn't fit that division. Even if she agreed with you, you still weren't going to be in a pure looking at images online situation so much more. He'd already crossed that line in other findings or undisputed... In other respects, but in terms of whether he would have picked up and traveled down to Washington, D.C. And, you know, the government must have had its reasons for so aggressively pursuing that argument, right? I mean, because they thought that it would lead the district to impose the higher sentence that she basically imposed. And so, you know, they had their reasons, but in doing so, they did not characterize the evidence the way Your Honor just did, which is an accurate characterization. They took it one step further than that, and they said that his arrest was the but-for cause of him not traveling to Washington, D.C. And that was not an accurate characterization. Is that really a misstatement of evidence, or simply a characterization of evidence in a legitimate argument? You know, not because... I think, you know, this characterized the evidence. The evidence shows that if we hadn't arrested him, he was coming here. Now, the government's not saying that now. They're saying it accurately now. They're saying it's ambiguous about what that was going to be. So they took it one step... When did a lawyer ever get up in court and say, this evidence is ambiguous, Judge? The lawyer typically... I mean, most things have changed a lot since my days. Lawyers typically get up and characterize the evidence in talking to the judge in the way most favorable to their side. He didn't misstate evidence. He didn't say the evidence is, and set out something that didn't happen. Or he said there is no evidence when there was evidence. He characterized the evidence in the way that lawyers do in their argument. Isn't that what happened here? I would say he took it too far. He characterized it in a way that, you know, would lead one to believe the underlying evidence was not what it was, which shows that Mr. Rockett had basically gone dark on them and stopped communicating with them prior to both the date for when he would travel and the webcam. So, I mean, you know, he had either backed out or for some reason... Well, look, it was a very short time. And the government's argument was travel per se, but that they needed to get... That but for their intervention, a child would have been harmed. That's their argument. And there's... That's crystal clear, is it not? He'd been videotaping this child in his house, in his girlfriend's house, for quite some time, had said she'll be back Friday. And the undisputed facts are there was an agreement that he was going to owe the second half of that payment of horrific images to Detective Kalchak on Saturday. Their argument went beyond that. No, no, no. But that they had... That was the powerful fact, at least as I read it, was that whether or not a child was going to be harmed. And a child most certainly was. Well, he never showed up for the time of the webcam. So I would say, but... No, it's the videotaping in the house. Oh, no. Yeah, but I know that was conceded. I think we were all arguing about that. That's what the argument should have been about. But they took it beyond that to focus specifically on what his plans were with respect to this fictitious child that the detective had. I think his failure to meet with Detective Kalchak and the child was, quote, not due to any lack of effort on the defendant's part, which is false. And then they said again... If it's false, or is it a matter for disagreement? If it's a matter for disagreement, is that really any misconduct on the part of the prosecution to give it the best shade for their sake? I think it takes a step beyond that. Because it doesn't say the evidence... The fact that you think it takes a step beyond is not our standard. Well, here's the second thing they said. Here's the second thing they said. And it's true that the defendant never traveled to the District of Columbia. So this is specifically on the travel offense, not the webcam, not what happened up in Pennsylvania. And it's true that the defendant never traveled to District of Columbia. The defendant never followed through on that. But there's a reason for that. It's because he was arrested for it. I mean, that's just not an accurate characterization. How would the fact that he didn't travel be mitigating when the concern was that their intervention stopped harm to a child? That's going to be relevant, whether he himself had backed away from harm, or the government had to stop him from inflicting more harm. One can see how that's relevant. And if either the government had said it the way Your Honor just did, or... No, no, I'm just asking him what is the... He didn't travel to D.C. when the concern was harming children here. I don't think... And it's an Internet offense. You can harm them pretty powerfully from wherever he was. Yes. But I think a hidden camera offense is quite different from traveling to Washington to engage in hands-on contact. It's different for a number of reasons. But he was never going to engage in the hands-on contact. What's that? He wasn't going to engage in the hands-on contact. He was... The government suggested very strongly, I think they said directly, that he was going to come here and molest this fictitious child that the detective was offering him. And they're just... The evidentiary basis for that was not there. And that's the whole problem with the sentencing. I didn't... I read the harm to a child they were talking about as the daughter... Or that the young lady returning to the house in which Mr. Brock lived. They're directly saying that he never traveled to the District of Columbia. And he never followed through on that. Because, I mean, that's clearly for a meeting with this fictitious child. I mean, the government focused very heavily on that. Why? I don't know. And whether it influenced the district court judge, we can't tell. Because the district court judge... I think we can tell because we take the district court at its words for the reasons it gave for the sentence. I thought your argument was that the district court... It's not that we can't tell. It's that the district court had this whole other factor it had to address. Well, I would say the same... I'm sorry. Am I wrong about that? I'm sorry. The district court judge never addressed this argument. Never said, I'm not considering it. And I do think when... Well, the district judge came properly with all the things she's not considering. But this was the main point of contention between the parties. And Rita and what the other cases say. Basically, when something is emphasized to this extent, it is incumbent on the district court judge to at least address it. To say something about it. And the district court judge can say, this doesn't matter to me. I'm not considering this. It's too speculative, whatever. Or I am considering it. But I think for the purpose of this exercise, among other things, we need to know what the district court's reasons were. And we didn't really get those from this year. This was a well-developed argument. I would say the same thing about the recidivism. At a very fundamental level, I don't think it's correct that we can go in and have a district court judge say, basically... Income tax offenders are very greedy people who are going to go out and do it again. The recidivism is extraordinarily high, so I'm going to give you a sentence at the top of the range. And if that turns out to be completely wrong... All right. Mr. Jeffress, how about addressing the supervised release conditions? On that, you know, again, probation... And it's now in the record. The probation of the government do not request these conditions. The challenge conditions. We've only challenged certain ones. And the probation of the government do not request these conditions. I just want to clear up one thing. Did they still request them at the time of the sentencing? Was this a post-sentence... I'm sorry. Was that a post-sentencing development? Or was it even at the time of the sentencing, they were no longer requesting those things? I think it was a post-sentencing development. So this was in 2012. But they've evolved over time in light of the case law and other circuits, and in this circuit. And so do we evaluate the legitimacy of these conditions based on the state of law and the record before the district court at the time of sentencing? Or what authority lets us say, that might have been fine then, but there's been this intervening factual development, and so... Do we on appellate court look at the state of the law and record, law and facts now? I think what I would say, it's very clear that it should be. I mean, plain error, whatever error, is assessed at the time of the decision. So in terms of, insofar as probation and the government are not asking for these for legal reasons, and the legal reasons are out there, it's assessed in terms of all the intervening law. So it's assessed as... Right. Plain error is assessed at the state of law, but I'm not sure this is a law development. You've sort of offered a factual consideration. That's why I'm trying to figure out how to factor that in. I probably should have said, I think probation and the government have based these decisions not to ask for these things based on an intervening law. Nonetheless, other than the romantic relationship condition, every one of these conditions has been upheld, and there are cases there. The law is evolving on this. Obviously, especially something... Other than the one about romantic relationship, every one of those conditions, there are cases that have upheld the condition, are there not? Well, with respect to the penal plesrograph, I mean, that's been struck down as unconstitutional. Even a judge of this court has said that... Judge Kavanaugh has said that he believes that that... Even Judge Kavanaugh. However, that's one that we don't know whether it's ever going to come in anyway. That's not... I mean, again, I don't think... We can strike that one, and it doesn't change anything, certainly, right now. I don't think it's assessed that ripeness is the proper argument for the government, which is basically stated in our brief. But, I mean, I think that the government's asking the court to basically create multiple circuit splits on these issues and delve into issues that are constitutional in nature and very important in nature for things that wouldn't be requested today at least. Are they all subject to plain error review except for the relationship condition? You know, we made an objection to all of the conditions. The district court then expressly stated... To the conditions. The district court expressly stated your objections... I understand. The same thing happened in our Love case, and we said, that's not enough. So how is your situation different? Well, in that case, the district court did not expressly state your objections to all of these are preserved, and then further reviewed the romantic relationship form. I mean, so I think that... I mean, for the district court to say your objections are expressly stated, your objections are all expressly... I mean, they're all preserved. I think the court would be hard-pressed to then overrule that and say, oh, no... How does she know what she was preserving? Objections to the special conditions of supervisor release. I mean, what is your objection? How does she know what she's preserving? A constitutional one? A factual one? A legal one? How does she know what she's preserving? How do we know? I don't know, but I mean... We don't know. That's the problem with a general objection. I get that she said that, although I think it's vague whether she thought it was unarticulated objections or the collection of objections made at that point to contact with children, that's the immediate precedent for her statement and for the attorney's statement about the objections generally. But even if we give that, she may think it was preserved for her purposes, but she can't preserve things for our purposes, given our precedent and our rules, because we don't have any idea. Well, again... It makes us the court of first view rather than review. Yeah. I would say just two things quickly. One is that, you know, for the reasons you said earlier, they're assessed on the plainness of the error now. So even if we're under a plain error, these just don't make it. And, you know, that's what the government's saying. And just because another circuit has upheld them at some point in time, maybe quite a while ago or something like that, I don't think... I think Judge Garland is a... He's here... That doesn't inoculate the error from... That doesn't inoculate it from plain error review before this... Can you just take a minute and talk about the significant... Because that one you did object to, about the significant relationship point. And so on this one, the government's basically asking the court to create a circuit split with the Second Circuit's decision in McLaurin. And then also, yeah, on whether the other... Whether that is vague, whether it makes any sense to apply in a case where, you know, the significant partner does not have children. And the government's only justification for this is that, like, look, everybody should know about this man's offense. So they can make a decision about whether to, you know, for becoming a relationship with him, knowing what he might do in the future. That's far too, I think, speculative and far removed from, you know, the narrow tailoring requirement that they have to... The courts have to... Assume that's the only... We agree with you, but that's the only thing we find wrong. We need to vacate and send back, or can we simply start that one condition and otherwise... I think in terms of the remedy, the court could do... Could refashion the conditions or order the district court to refashion the conditions. Yes. Thank you, counsel. Thank you. Ms. Seifert, good morning. Good morning, Your Honor. Karen Seifert for the United States. Appellant's counsel states that we need to know what the district court's reasons are for the sentence. And this court does know those reasons because the district court was very clear about what her basis was for imposing this sentence. And a careful review of the record reveals that there are five reasons that she gave for this sentence. One was the severity of the crime, and that is the predominant reason here. This is multiple crimes, really, that the court was concerned about. One, the young girl in the next room. Two, the massive collection of over 600 child pornographic photos on the defendant's computer. And three, the transmittal of child pornography from the defendant to the undercover. Those were the crimes that the court was worried about, and the real victims involved in those crimes. That's the second thing that she really focused on, that there are real live victims here that the defendant was hurting. Well, I think their point on the camera show or traveling to D.C. argument is not that she didn't say what she said about those things, but there was this mitigating factor here, and that is that this guy who had been hesitant about crossing lines in the first place was backing off. When push came to shove, backed off, was doing his best to extricate. Now, that's their version of the record. You had a competing version of the record, which was, heck no, this is a case about things that would have gone still worse had we not intervened. Why didn't the district court have to grapple with that debate as to what, for them, was an important potential mitigating factor? I think, Your Honor, she did grapple with it. And if you look at her exchange with counsel on page 18 of the transcript, counsel specifically states that his client refused the repeated invitations to come down, and she replies, I would agree. So she agrees that Detective Pelchak is being aggressive, but then she says, in his own court, without Detective Pelchak having anything to do with it, Mr. Rock was doing. Now, whether he was successfully obtaining what he was going for is a different issue. I have no idea whether he succeeded or not, but he was doing. And that's what her concern is. She doesn't even mention Detective Pelchak when it comes down to pronouncing the sentence. She doesn't mention the undercover operation. What she talks about is the real-life victims, the girl in the room next door who is being groomed by this defendant, who has exposed himself well-aroused to this young girl, who has placed a vibrating egg in her room for her to find, to kind of test the waters. That's what the judge is worried about here. And she's worried about the real-life children in the 600-plus images, which she says are very disturbing. And she had reviewed those images that are found on the defendant's computer. When she actually imposes the sentence, the only mitigation she references is, I'm going to knock some time off because of his risk in prison, to abuse in prison, but then doesn't come back and mention this. Is that something we need to worry about? Well, no, Your Honor, because I think she's already dealt with it in the exchanges with counsel. And Rita doesn't require her to say, I understand that the parties are disputing the facts about what was in the defendant's head when he failed to respond on, you know, June 15th to the detective's message. And I find that he was thinking X or Y. Rita doesn't require that. All Rita requires is that she is fully aware of the arguments, and that she fully considers the evidence that supports it. And the record is replete with those discussions that she had with counsel, where she tests this issue and these arguments. And that's what they are. As Judge Santel pointed out, they are arguments about the facts. And I would point out to the court that the government here made no attempt to mislead. The government, in fact, in its memorandum in aid of sentencing, submitted the entirety of these internet chats, every single one to the court. So the court had the very facts before it that the government was arguing about and that defense was arguing about. And the court could read all of those. It's very clear she was very familiar with what transpired between the defendant and Detective Palachuk. And she just didn't think that that was significant here, that the more significant elements of this case are the defendant's own conduct with the girl next door, with the collection of pornography, and with the transmittal of child pornography. That's the court's primary concern. And that is what she talks about at sentencing. And that is why when defendant counsel repeatedly brings up this argument about whether or not defendant was really going to go through with anything with Detective Palachuk, she says, yeah, I agree. Detective Palachuk is very aggressive. But it doesn't matter because it's his conduct I'm looking at. That's the import of her statements and fairly read by this court. There's no error here because she hasn't relied upon any misstatements by the government or any erroneous facts about recidivism. And if I might just briefly address the recidivism aspect here on appeal, appellant has picked one line out of the very beginning of this sentence and sort of hung his hat on that line, which is where the court says, historically, recidivism has not been easy to avoid. But then defense counsel challenges the court on that. And there's an ongoing debate between the court and defense counsel. And so by the end of this sentencing hearing, the court makes very nuanced statements like, it's hard to know about this crime and easy to do again. And recidivism in this area is very hard to predict. So defense counsel was an excellent advocate for his client. And the court recognized that and then chose to say things that were more appropriate with what the court was thinking at that time. And I think the other thing to note here is, it's not just a rate of recidivism that the court is worried about. It's the fact that this is a very serious crime. And she says that repeatedly. It's a very scary and serious crime. So even if the recidivism rate is low, it's irrelevant to her. I apologize to my colleagues if I'm jumping ahead too soon. But on the conditions of probation, isn't that romantic? Is what's significant romantic relationship a bit vague? Well, I don't think it is vague. I think that... I've been a long time removed from the world of the singles. But I'm not even sure that there's always unanimity between the two parties involved. I think as Judge Kavanaugh states in his dissent in Melania, it's certainly a condition that if the defendant is concerned about what it means, he can talk with his probation officer to seek clarification. You have to. Shouldn't conditions be such that a defendant can conform his conduct to those conditions without having to seek counsel? Well, I think that this court could offer a limiting instruction as other courts have where they think conditions are vague. But I don't think it's so overly vague that in this case, it would be one in which the court would need to strike down. Is it identical to what was struck down by this circuit in Melania? No. Well, I think Melania is a different case. I understand the facts are different. Are the terms of the condition identical to what was held to be improper in circuit precedent? I don't believe that that condition was expressed or was discussed at length. It may not have been at length. Melania. I don't need lengths. I need a holding and I've got a holding. But the premise of Melania is that the standard conditions for sex offenders are not relevant to that case. It may have been the premise. But there's a holding striking down the identical relationship condition because of the vagueness of the language and sweeping in situations that bear no relationship to the criminal conduct at issue. And that's the difference. No, it may not. And you've got to get past the vagueness of the language before we know if you're sweeping in stuff that's farther than the relationship here. Well, I think that that argument was not as slushed out in Melania as I think it could be. I don't know that here where we're talking about a significant romantic relationship. How do you define significant? I'm sorry? How is it placed out here? It says a significant romantic relationship. And that is what it said in Melania, isn't it? I think that the issue in Melania that what the court was focused on and I will get back to you. Never mind what the court was focused on. Did the court strike exactly the same condition in Melania? My understanding was that the basis for striking that condition was different than what was being advocated here. This is a yes or no question. Yes, but for a different reason. No, didn't they talk about the vagueness of the language? They did talk about the vagueness of the language, but they also talked about the fact that it's an ill fit for that case. Okay, so they had two prongs. On the vagueness of the language, can you tell me, can you give me your definition of significant romantic relationship? Well, for instance, if one were calling... For instance, I need a definition, not an example. A girlfriend or a boyfriend relationship would be a significant romantic relationship. I have a teenager, okay? And when she thinks the guy is a boyfriend, and when that boyfriend thinks he's a boyfriend, they're not the same thing at all. It works the other way. Well, here it applies to the defendant. So I think that it's his own view of what is a significant romantic relationship. It's his own view? If he's saying that's my girlfriend, he's presenting someone as his girlfriend, then he thinks that's a significant romantic relationship. And if she says, no, I'm not, then is he in trouble? Has he violated his condition or not? Well, it's what he holds that person to be. I mean, that says... So as long as he says, I don't think we're... They could be living together. And he could say, but I don't think we're monogamous. I'm not calling you my girlfriend. Surely you don't mean that. Surely it's not his own subjective view that the probation office is going to give license to. Well, Your Honor, I would note that for this specific condition, to the extent that the court is concerned about vagueness, the same conduct is covered elsewhere in the conditions that the defendant... So then we don't need this one? Well, that is something that I think... Do you concede that we can strike that condition? I'm not agreeing that you should strike this condition, Your Honor. But I would note that... And what is the point of the assertion that it's covered other places? I'm sorry, Your Honor? What is your point when you say it's covered other places? I'm saying that in the standard conditions that are applied for all defendants, this is number 13, it's on page 235 of the record, that defendants must notify third parties of the risks that are occasioned by their criminal record and permit their probation officer to make such notifications. So it is very similar to the... That's actually a broader condition than the one that we're talking about here, that defendant has not and did not object to below. And so ultimately, that's the same issue is encompassed here. It's your burden to show that these things are no greater than necessary. And so if you're telling me we didn't actually need it, I'm having trouble understanding how you meant the no greater than necessary standard. I think the concern here is that the defendant used his romantic relationship, which no one questions was a significant romantic relationship, one where he lived with this woman to prey on a child. And the concern that the court had... But then you told me that... I get that. I get that's a huge concern. But I thought you just assured me that other conditions would already protect against that. That don't have the same vague language. Well, the concern is that here, the court wanted the defendant to be required to inform and communicate with his probation officer about when he's in these relationships. So the probation officer can make the necessary notification either under Provision 13 or under the special condition. And that is why I believe the court put that in there. And she goes at length to describe why, when defendant objects to this condition, why she thinks that's necessary. And so... It was at length. I think she said, well, you use your relationship to harm this child, but she doesn't explain what she means by the term significant romantic relationship. And if the court is concerned with the vagueness of that, it's could certainly remand for the court, for the district court to define for the defendant when it needs to make such a notification. But certainly under the facts of this case, that is a reasonable condition of probation by the court's own discussion of why it was appropriate in this case. If it is vague to the point where you cannot know whether to conform your conduct, how could it ever be a reasonable condition? The government disputes that it's vague to that point, Your Honor. And I would reference the... Define it for me. Well, I would just reference to the court the opinion in Pennington from the Fifth Circuit that has a similar... Forgive me if there's ever been a Pennington. Define it for us. We've asked you a couple of times now. My colleague did. Well, I'm not sure that this court is required to define something of that terms. Because as you described... You are required to answer my question. Yes. Well, Your Honor, I think the point is it's going to be different for every person what a significant romantic relationship is. That's exactly the point. How can it not be vague? It's going to be different for every person. You're an educated, articulate user of the English language. We have asked you repeatedly to define it. You can't. I would define it as a relationship in which one is romantic with the other person and it goes beyond casual dating to the point where we're holding each other out as being in a relationship. That would be a significant romantic relationship. I'm sorry, Your Honor. Do you think you said anything just then that wasn't vague, except for the holding out part? Well, certainly... Then it goes back to him defining his own. Certainly, if you are holding out another person as your girlfriend or boyfriend after living with them, that's significant. Here's what I'm told, because I'm now a fuddy-duddy parent. And that is that the younger generation doesn't even use girlfriend, boyfriend anymore. They hook up. And it's not even meant to come with obligations. It is just hanging out together in a more progressive way. Further progressed way than hanging out with friends in a non-romantic or sexual way would be. So is a hookup one weekend a significant romantic relationship? I don't think that it would be, Your Honor. And I think that doesn't... How about two weekends? Exactly. I'm sorry. Two days in a row, a Saturday and Sunday. Well, again, I don't think it would, because the concern the court is worried about here is the utilizing of that relationship to prey on children, right? And so if you're just with them two days... If the court is saying you won't use a relationship to prey on children, we would have a condition we could understand. It wouldn't be vague. But that's not what the court... If the relationship puts you into contact with children, notify. Well, I think the other issue is all relationships are going to put you in contact with people who are known to the person you're dating or the person you're in this significant romantic relationship with, your girlfriend. You're going to know her family, her friends, her children, if she has them. And the concern the court has is the utilizing of that connection that comes from the trust that is gained by saying, this is my boyfriend, this is my fiance, this is my living. All that sounds very good, but it doesn't answer the question as to what the limits are of this condition. You're telling us good reasons for having such a condition. Maybe that's true if the condition were well enough to find, but that doesn't have anything to do with whether it's well enough to find or not. I think the use of the word significant is intended to take it from just any hookup, any one date, to where there is a relationship that is significant. Can I ask you something about process here? Because there's talk in the papers, your papers about the computer conditions and all the things. We'll work this out later. That's why I give the discussion. And I just confess that I don't know exactly how this process works. So if it's however many decades from now and Mr. Rock is within a year of release and computers have taken over the world, and he wants to challenge the computer internet access limitation, because at that point you really can't do anything in society without doing it through a computer. Is there a process before he's released to challenge? A real viable one, a meaningful one where things sometimes happen. Either with the probation office or with the court, or does he have to wait and go out and then just ask his officer to fix it? Or is there a formal process for addressing this? I believe he's at liberty to move to modify the release conditions. Move the court. At any time, move the district court. You don't ask the probation office. Do you ask the probation office first? No, I believe his counsel can file a motion to modify and could have in this case and ask for a more kind of recent set of... No, but there's a lot of talk about, well, the probation office will figure out what to do if this internet access problem is too suffocating. So that's why I was curious when opinions, including from this circuit, have said the flexibility we give the probation office will take care of any concerns we have now about how this is going to work. So how does that flexibility work? Well, putting aside the court process, specifically with probation, it would depend on where he's being supervised. And this is not in the record, Your Honor. But my representation from probation is, for instance, this defendant was sentenced in D.C. but lived in Pennsylvania, that when he moves, if he asked to move to Pennsylvania, which I think is probably likely, he'll receive actually a whole new set of conditions from Pennsylvania that he will have to accept. And those will be the current conditions in Pennsylvania. From a court in Pennsylvania? From the probation in Pennsylvania. It does not strike any condition imposed by the court. Well, it frankly ends up replacing the conditions because he's being supervised over there. So he'll get the current conditions that probation imposes in that place. At least in theory, the court imposes additional conditions to those that are the normal conditions. At least in theory. Otherwise, why is he bothered? Well, because we don't know if he'll move back to Pennsylvania. These are the conditions that are in place. If he wants to change the position, the conditions imposed by the district court here in D.C., he can move to modify. If he moves to a different jurisdiction, he has to accept the probation conditions there. Well, how does he challenge those there? Well, it ends up being, if he wants to go there, it ends up almost being contractual. Those are the conditions that are available there. Well, this can't be a fairly negotiated contract. Staying here, though. The law officer we have right now is a guy who's been sentenced in D.C. and we're considering a D.C. sentence. So staying... How soon he stays in D.C.? Right. First of all, it doesn't matter whether he moves to Pennsylvania. Is there a way, I know there used to be, but is there still a way that he can ask for a change in the conviction? Yes, he can move to modify this court as soon as he's released or even before to say the conditions that are imposed are not... He can't do it before. Well, I think he can actually do it at any time. I mean, he can release... And apart from the court process, because in our decision in Legg, in other cases as well, we said, look, we're upholding these internet and computer restrictions for now, but the probation office, not the court can modify it, the probation office has the flexibility to deal with it because you have to have the permission of the probation office to go online under this condition. That's correct. But if he doesn't, if they're saying no, imagine his probation officer is saying no all the time. So what you have in effect is the categorical prohibition on internet access that we struck down in Russell. How does he challenge that? I think he comes to the court and says, this is unreasonable, and I want the condition to be modified because the way it's... not only the way it's written, but the way it's applied to me is unreasonable. And the court can then either remove the condition or seek to have a condition that's more liberal applied. And so the court remains an advocate for the defendant to... There's no way administratively to challenge the individual probation officer decision. I don't know the answer to that, Your Honor. But I do know that, as is evidenced by our footnote in this case, that probation continues to update these conditions as they think is appropriate, which I think is a good sign to this court that they are cognizant about changes of technology. And as Your Honor referenced in Leg, the court is not intended to be an oracle of technology is what the court said there. And it will be difficult to know in 2024 how any of these conditions will be applied. And that is part of the difficulty of bringing this posture of this case to this court at this time and asking the court to sit basically and kind of opine on things that may never come to be. And frankly, the counsel referenced the PPG testing, a question of first impression for this circuit for which this court has no record before it on which to decide. And so the government's position is that with respect to the exception of the relationship condition, the remaining conditions are all reviewed for plain error. They're either upheld on plain error review by this court or by other courts. And with respect to the PPG testing condition, there is a circuit split. Can I ask you about that? What's the point of that? I mean, if he reacts a certain way, is he then given some sort of medicine? Is there some sort of procedure performed on him or do you know? And this is not in the record, Your Honor, because this wasn't fleshed out below. But from the other cases that we cite in our brief, my understanding is that as part of a more holistic testing, that this test is meant to see how the treatment is working and whether additional treatment may be needed. And there are, again, this is not in the record, but probation represents there are now also newer tests that they are adding to the treatment like rapid eye movement tests, things of that nature. So obviously, you know, the concern is that we don't even know if he'll have this problem by the time he comes out. Yes. Well, and frankly, this particular condition is conditional. So as Your Honor points out, it may never be imposed on this defendant at all. Well, you said his first impression, but that's not accurate. We struck in Melania. It was listed and identified as one of the conditions and they were all vacated. And then Judge Kavanaugh said, that's the one part I'm joining is that part. So in fact, we have precedent. It doesn't say ripeness, right? It doesn't make it a ripeness problem. It strikes it down in advance. So are we bound by Melania? I reviewed this court's opinion in Melania with respect to this question, Your Honor. And I don't see any discussion in Melania's panel opinion with respect to the fact that that is unconstitutional. Because they say the district court did not, who just sort of put them on, did the same thing, did no individualized analysis or consideration of that factor. And they said, you didn't apply the right test. They're all vacated. But not for constitutional grounds, which is what? Way to be constitutional. There was nothing in this case where the district court made any individualized finding. And the so-called science behind this thing is highly questionable. And it's an extraordinary, as Judge Kavanaugh said, an extraordinary intrusion on liberty. It's hanging over his head now. The sentence is imposed. I think it meets any Article III constitutional ripeness. Maybe you have a prudential ripeness thing, but you don't get to impose conditions that hang like a sword of Damocles over someone's head. And just say, yeah, well, we're hoping they never do it. We never have to confront this. Why don't we just say it's not valid now? And if there's great testing in 20 or 30 years, then the government can move to modify his condition and add that in. I don't think that it's not valid for under these circumstances. I think that the court in Melania was saying that none of the conditions that are the additional conditions for pedophiles or sex offenders were relevant in that case. And the court agreed with that. Well, the court said you didn't make the explanation that the law requires. And you have to go back and comply with the type of analysis that's required. And we don't have any individualized discussion here either by the district court. And had the district court focused on this? And didn't because the defendant didn't object to it. So that's under a plain error view. The question is whether, you know. Well, now that it's been struck down by Melania, then it's maybe plain, given what Melania said, it's plain error here. Well, I think it was the fair reading of Melania from the government's view is that it was struck down in that case because it was an ill fit for that defendant. Here, we do have a defendant who, in fact, is a child porn user, distributor, a person who is, you know, into pedophilia. And so this is a case where he's in the appropriate set of people for these additional supervised release conditions. And the government's position is there's no plain error because, as this court has said in other cases, there is no plain error on these release conditions where the circuits are split about whether or not something is an appropriate condition relief for pedophiles and sex offenders. And so that's... All right. I think we have enough to get to your side of it. Thank you, Your Honor. Does Mr. Jeffries have any time left? All right. Why don't you take two minutes? We would ask that you affirm the judgment. Thank you. Thank you. I mean, just very briefly on the last set of concerns that Your Honor has raised regarding how this actually plays out in practice with the probation officer and the procedures, especially the situation of the indigent defendant who does not have a lawyer. So the probation officer says, okay, I'm going to pull you in and I'm going to hook you up, you know, for the plasma graph. I'm going to... We're going to attach all these things to you and do this thing. He doesn't have a right to counsel at this point. He doesn't have, you know, for the indigent defendant, he doesn't have the ability to afford counsel. He has to make... He's in an incredibly... A power relationship that is incredibly imbalanced where you've got this person who can send you back to prison and has a tremendous amount of control over your life. And the amount of coercion that is present there on that defendant to just accept whatever his probation officer tells him, I mean, it's incredibly powerful. And, you know, this process cannot work that, you know, every time that he would have to, if it would take an incredibly resolute and, you know, person, and you see this in practice all the time, it's very rare that he will come to the federal public defender or whatever and say, listen, this guy wants to... is never letting me use the internet or this guy is, you know, going to do this plasma graph or has ordered me to do this and I need counsel because I'm going to fight this all the way. That's the exceptional defendant. And so the process can't be structured that way because probation officers will, in many cases, take the course that's safest for them and never let these people use the internet, you know, always insist on the most invasive procedures to determine risk. And so as long as, you know, and there's also, if they violate them for not doing this, there's a presumption of detention. So, I mean, I think right now, the way this plays out in practice is just not felt for that kind of thing. Thank you. Thank you.
judges: Henderson, Millett, Sentelle